SOUTHERN ABSTRACT & LOAN COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10225. Promulgated April 8, 1932.

*Homer K. Jones, C. P. A.*, for the petitioner.
*DeWitt M. Evans, Esq.*, for the respondent.

## OPINION.

LANSDON: The petitioner's first contention is that its tax liability for the fiscal years ended June 30, 1919 and 1920, should be settled on the basis of the amended returns. In our opinion this issue is governed by section 212(b) of the Revenue Act of 1918, which provides as follows:

The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income. * * *

Throughout its entire period of active operations the petitioner accounted on its own books for all cash received from commissions as income when received and made its income-tax returns on the same basis. It has always kept its books on the cash receipts and disbursements basis and all its original income-tax returns, including those for the taxable years, were made on the same basis. It now pleads and argues that the commission notes were earned before they were received and realized to the extent of their fair market value when

taken into its accounts. The proof is, however, that such notes, sometimes as many as 10 in number, were all taken by the petitioner at the dates loans for the principal were made. They were collectible, however, only as petitioner collected the interest on the loans and were not fully earned until such collections were made, anywhere from one to 10 years after their receipt. Even if it be conceded that such notes were earned before they were received, it does not follow that they were realized as income on date of receipt, unless they were accrued on the books. They represented the compensation due the petitioner for services rendered or to be rendered and were mere evidence of amounts to be realized at future dates.

Counsel for petitioner recognizes his own difficulties on this point by his contention that the notes in question were income when received, either at their fair market value or their present worth as of that date. He further argues, in the face of a record to the contrary, that the petitioner actually kept its books on the accrual basis. The only evidence that can be used in support of this contention is that the face value of the notes when received was taken into the "unearned interest account," which he thinks should be regarded as an accrual. If this is true, they were in fact taken into the books at their face value and there is no basis for the claim that only market value or present worth when received should be included in income. Only by accrual could they become elements of income when received. Either of the two methods of accounting for and reporting income is in conformity with sound accounting methods and the question here is not which is the better, but whether one having been adopted and used for 10 years, it can now be abandoned and the other adopted without distortion of income incapable of proper adjustment. It appears that the respondent was and is yet satisfied that the petitioner's accounting system and that its returns based thereon clearly reflected its income on an annual basis. For 10 years he accepted returns so made and settled the tax liabilities as indicated thereon. It is obvious that under the petitioner's accounting method comparatively small parts of its alleged earnings were reported for taxation in the earlier years of the income tax and increasingly larger amounts in the years here under review, when it was retiring from business and collecting cash on commission notes received in earlier years. It is equally clear that it subjects the total receipts from the commission notes to taxation instead of the present worth or fair market value of such notes as and when received. If the petitioner prevails here it will escape all taxation on the amounts of $49,708.97 and $55,824.53 collected in the respective taxable years and not there-

tofore reported or now reportable as income, except such part thereof as may have resulted from the collection of commission notes received in 1917, the single year in which any adjustment is possible under the theory of the petitioner. This result is repugnant to the law, which clearly imposes a tax on all income on an annual basis.

In *Leslie H. Fawkes*, 25 B. T. A. 366, where the petitioner sought to change a basis of reporting income that he had followed to his own advantage for 10 years, we said: " Taxpayers should not be barred from correcting any mistakes in their returns upon sound proof of the basis of their claims, but the administration of the taxing statutes requires a prompt adjudication of such matters. In the instant proceeding, however, more than 10 years elapsed before the alleged mistake was discovered and during all that time the petitioner profited from its decision that the two automobile agencies were separate concerns. * * * To allow such a claim in the circumstances herein would make a farce of the statute of Congress and render the collection of the public revenue unreasonably costly and difficult." We think this reasoning applies to the facts and contentions here. It is not disputed that the petitioner's original returns for the 10 years from 1913 to 1923, inclusive, were made in accordance with its regular accounting methods. Our conclusion that the change in accounting for and reporting income now claimed by the petitioner can not be allowed is not based on the doctrine of estoppel, but upon the fact that adjustments can not be made that will result in the taxation on an annual basis of the petitioner's income as reflected by its books.

If the bookkeeping methods of a taxpayer result in distortions of income that do violence to the principle that taxes should be assessed on an annual basis, the Commissioner has ample authority to reject the returns based thereon, or the taxpayer, on his own motion, with the consent of the Commissioner, may change its methods of accounting for and reporting income, but whichever party moves must base its action on the fact that income on an annual basis is not clearly reflected by the accounting methods theretofore used. In our opinion that is not the situation here. The petitioner from its inception kept its books and made its income-tax returns on the cash receipts and disbursements basis. Over a period of 10 years it paid taxes on its annual cash receipts and no more. No part of its income has either escaped taxation or been subjected to a double burden. Certainly there could be no such result if the method of reporting income now proposed by the petitioner should be approved.

The petitioner has already had the benefits which resulted from reporting its relatively small cash receipts in 1913, 1914, 1915 and

1916. It now seeks to increase its income for all the years in which its tax liability has been barred by the statute of limitations and to correspondingly decrease the same in the years in which adjustments are yet possible. It would also still further reduce the asserted deficiencies and increase its claim for refund and/or abatement by taking commission notes into income at about 60 per cent of their face value at date of receipt. Although probably not pertinent to the issue here, the record discloses that subsequent to the years under review the petitioner sold all its remaining commission notes for cash, all of which was income either when received or when the notes were taken. Obviously a decision in the case at bar favorable to the petitioner would lift all tax liability from any part of that amount which was derived from commission notes received in years as to which such liability is now barred by the statute of limitations. In our opinion the change in reporting income now asked by the petitioner would result in distortions which could not be adjusted except to the detriment of the revenue, and, therefore, must be denied upon the authority of section 212(b) of the Revenue Act of 1918 and corresponding sections of subsequent acts applicable here.

There are numerous decisions of the courts and of the Board which support the conclusion reached above, without resort to the doctrine of estoppel, and all are based on the requirement that a taxpayer's accounts must truly reflect its income.

In *Coley* v. *Pickering*, 21 Fed. (2d) 247, the court held that, when a taxpayer's accounts did not clearly reflect its net income, it was required by law to make a return on the cash receipts and disbursements basis. In *Hyams Coal Co.* v. *United States*, 26 Fed. (2d) 805, it was held that, " Courts, in the absence of positive law to the contrary, will construe a revenue act as intended to reach actual income."

In *Morris-Poston Coal Co.* v. *Commissioner*, 42 Fed. (2d) 620, the court said:

The law plainly recognizes that the selection of the system or method of keeping his books is primarily for the taxpayer. It further recognizes that the cash receipts and disbursements during the period furnish the normal or prima facie correct test for computing income. The Revenue Act of 1921, §212(b), 42 Stat. 237, provides that the computation shall be " in accordance with the method of accounting regularly employed in keeping the books of such taxpayer "; but " if the method employed does not clearly reflect the income," the Commissioner may adopt and require some other method, which in his opinion does clearly reflect the income. Section 213 (a), 42 Stat. 238, says that items of income should be included in the report for the taxable year in which they were received by the taxpayer. unless, under section 212(b), they were to be properly accounted for in a different period. Hence the right of the Com-

missioner to reject the taxpayer's theory of income in this kind of a case stands upon the Commissioner's preliminary finding that the method employed by the taxpayer did not clearly reflect the income. * * *

In the instant proceeding the petitioner selected its own system of accounting and for 10 years based its returns thereon. Even now it has not changed the system first adopted, but contends that in respect of the commission notes it should be allowed to vary from the cash receipts and disbursements basis. When the petitioner filed its income-tax returns for each of the several years here involved the Commissioner, in his discretion, determined that the income therein reported was truly reflected in its books. Without a finding to the contrary he could not reject the returns, and we think it follows that tax liability must be computed on the basis of such accepted returns.

In *Maine Dairy Co.*, 4 B. T. A. 375, the Board approved the exercise of the discretionary power of the Commissioner to reject returns and compute liability by whatever method of accounting clearly reflects income. In the case at bar the Commissioner has exercised his discretionary authority by accepting the returns of the petitioner and computing the taxes indicated therein. In *Henry Reubel, Executor*, 1 B. T. A. 676, the sole question involved was whether an accrued item of expense may be deducted by a taxpayer on the cash receipts and disbursements basis although not paid during the year for which a return of income was made. In our opinion in that decision we said:

In this appeal the taxpayer followed one of the two alternative bases provided by statute for keeping accounts and making returns of income. He claimed a deduction which can only be justified under the other alternative basis. In our opinion, to allow such a deduction would result in a distortion of the result of the income of the taxpayer for the year in question and would lead to the inevitable conclusion that Congress, instead of providing for two alternative bases for reporting income, each complete in itself, provided for alternative bases with respect to the reporting of *items* of income and the taking of *items* of deductions. Such a holding would be inconsistent with the specific language of Congress in sections 200 and 212 and wholly at variance with the obvious intent of Congress that income should be reported in such a manner upon an annual accounting basis as to reflect the truth. * * *

To the same effect on a similar issue in *Consolidated Asphalt Co.*, 1 B. T. A. 79, we said:

It would be an obvious distortion to return only the gross income actually received and deduct therefrom both the amounts paid out and the payments anticipated.

Each of the last two cases above cited deals with deductions from income, while the instant proceeding relates to additions thereto.

The petitioner now seeks to take into its income in each of the taxable years its cash receipts from rents and dividends, omitting the amounts derived from the collection of commission notes, and also the value of commission notes taken in such years which can become cash income only as and when collected and that are income items in the year in which they are received only on the accrual basis. We think the same treatment must be applied to the accrual items of expense and of income, and, therefore, consider that the *Consolidated Asphalt Co.* and *Reubel* cases, *supra*, support the conclusion that we have reached herein.

In our opinion the petitioner has failed to prove that its method of accounting and reporting its receipts from commission notes did not " clearly reflect " its income. Its claim is denied. *Theodore H. Beckman*, 8 B. T. A. 830; Cf. *John Hoskins*, 7 B. T. A. 299; *Olinger Corporation*, 9 B. T. A. 170; *First Trust & Savings Bank*, 11 B. T. A. 1034.

Petitioner took commission notes into its accounts as unearned interest, which it treated as income only as and when collected. At March 14, 1915, the unearned interest account amounted to $167,-767.36, none of which was included in profit and loss or surplus account. On April 15, 1917, a stock dividend of $164,200 was distributed and the amount thereof was charged to " unearned interest account." In each of the taxable years the petitioner included the amount of such stock dividend in the computation of its invested capital for profits-tax purposes. Upon audit of its returns for each of such years the respondent disallowed such amount as invested capital, but later allowed special assessment and determined petitioner's tax liability in conformity with section 328 of the Revenue Act of 1918. Under the accounting system of the petitioner the " unearned interest account " was not earned surplus and, therefore, is not an element in the computation of invested capital. The commission notes on hand, however, were of substantial value and were used by the petitioner as collateral for loans. It was ordered prior to the hearing that evidence should first be taken only on issues not related to special assessment. The proceeding will be restored to the calendar for further hearing under Rule 62(d).